## WILLIAM H. BIRKHOLM, appellant,

*v.*

## HANNAH A. WARDELL et al., respondents.

1. Although the personal estate of an intestate was not liable for the payment of a mortgage on lands bought by him, the payment of which was assumed by him in his deed for the premises, his administratrix paid interest thereon out of the personal estate. His child, who was his only heir-at-law, and next of kin, excepted to the allowance thereof to the administratrix.—*Held*, that under the circumstances, the exception should be overruled, the payment having been for the exceptant's benefit.

2. An administratrix was allowed the reasonable cost of a cemetery lot, which she purchased for the burial of the intestate, and wherein he was buried, although the title thereto was taken in her individual name.

3. Where an accountant produces vouchers in support of her claim for moneys paid by her, and exception is taken to the allowance of such claims, and the accountant is not required to produce additional proof thereof, the claims will be allowed upon the vouchers.

4. Allowance made for moneys claimed to have been paid by an administratrix to the orphans court officers, a long time ago, for fees for their services to the estate, although she was unable to produce vouchers therefor.

5. An administratrix assigned as her reason for not accounting for thirty years that she had handed over all the papers, vouchers &c., of the estate to her co-administrator to file the account, and supposed that he had done so long ago.—*Held*, that there did not appear in the case to be such dereliction as should deprive her of commissions.

6. An administratrix, who was the mother of the exceptant, supported him from the time of his father's death, when he was two months old, until he was twenty years of age. The rents and income of the estate were insufficient for their support. As widow she was entitled to the $200 exemption but did not claim it.—*Held*, that under the circumstances of the case she should not be charged with interest on the balance of the estate in her hands, the court being of opinion that the cost of the exceptant's support, over and above his share of the rent and income, would probably exceed any amount of interest which could be justly charged against her in his favor had she not supported him.

7. An administratrix, as guardian of an infant, sold his lands by order of the court of chancery, and from the proceeds paid a debt due from the infant's father.—*Held*, that she ought to have been allowed therefor in her account as administratrix.

8. Although an accountant does not appeal from a decree of the orphans court against her, this court may, nevertheless, correct an obvious error in the amount of a claim to which she is entitled.

Appeal from decree of Monmouth orphans court.

*Mr. A. H. Strong*, for appellant.

*Mr. C. A. Bennett, Jr.*, and *Mr. H. G. Clayton*, for respondent.

THE ORDINARY.

The respondents are the wife of Charles Wardell and the surviving surety upon the administration bond given by her and her co-administrator, Samuel Posten, as administrators of Hans C. Birkholm, deceased, late of the county of Monmouth, whose widow she was, and who died intestate August 2d, 1855. The letters of administration were issued by the surrogate of Monmouth August 21st, 1855. Mr. Posten died in 1882. On the day on which the letters were issued the administrators proved and filed the inventory of the estate. The amount of the appraisement was $1,783.24. In May, 1884, no account having ever been filed, a citation to account was, upon the application of William H. Birkholm, the appellant (who was the only child of the intestate), issued out of the orphans court of Monmouth county against Mrs. Wardell and her husband and the administrator of Mr. Posten, requiring them to account for the estate of Mr. Birkholm. Upon that citation Mrs. Wardell accounted by putting in a statement, alleging that her co-administrator had taken the whole of the estate and administered it, and she supported the account by her affidavit that, after filing the inventory, she left the care and management of the estate wholly to Mr. Posten, and that he assumed them, and that no part of the estate came into her hands as administratrix, to the best of her knowledge and belief; that she had no books or papers relating to the estate; that she had made inquiry of the legal representatives of her co-administrator for any and all of his books and papers relating to the estate, but had not been able to get any of them

or any information as to where they were, and she therefore declared her inability to render any other account than that which she had put in under the citation.

Mr. Posten's administrator put in an affidavit stating that he had settled the estate of his intestate, and declaring his inability to render any account of the Birkholm estate. The court thereupon by order discharged him from the proceedings upon the citation. It appears by the statement of facts and evidence signed by the court, that the court were satisfied that all of the estate came to the hands of the administratrix. The appellant excepted to the account of Mrs. Wardell, and upon the hearing of the exceptions the orphans court restated the account. By direction of the court notice was given to the surviving surety upon the administration bond, and he appeared by counsel. By the account as restated the accountant was charged with the amount of the inventory, $1,783.24, and was allowed $1,486.71, leaving a balance against her of $296.53. From the decree upon the exceptions the exceptant appealed. Mrs. Wardell explained to the court that what she meant by the statements in her affidavit filed with her account, was that she had given to her co-administrator the books and papers relating to the administration, and that he said he would take them to Freehold, and state the account with the surrogate, and that that was the last she heard of the matter, and that when the citation was served she supposed that the account had been settled years previously.

The intestate, besides his personal estate, which, as before stated, amounted to $1,783.24, left some real estate which was mortgaged for $1,000, in two mortgages for $500 each, one of which was upon the property when he bought it, and he assumed the payment of it, and the other was given by him. The appellant who, as before stated, was the intestate's only child, was, at the time of his father's death, only about two months old. His mother, the accountant, supported him from that time until he was twenty years old. The net profits of the real estate were not sufficient for their support. In 1867, Mrs. Wardell applied to the court of chancery for leave to sell part of the land to pay off the mortgage debt ($1,000) upon the

property. She obtained the leave, and part of the land was sold by her accordingly in that year. The appellant came of age in 1876, about eight years before the citation was issued. His objections to the account are numerous. One is to the allowance of one year's interest paid upon the $500 mortgage, the payment of which was assumed by the intestate. It is urged that the personal estate was not liable for the payment of that mortgage. It is obvious that the objection is without weight in this case. Although the personal estate was indeed not bound for the payment of the interest upon the mortgage (*Campbell v. Campbell, 3 Stew. Eq. 415; Mount v. Van Ness, 6 Stew. Eq. 262*), the payment should be allowed as between these parties. The appellant for whose benefit it was made surely cannot complain of it.

Another objection is to the allowance of the amount ($15) paid by the accountant for a grave for the intestate. The objection is based upon the ground that it appears that she took the title for the cemetery plot, for which the $15 were paid, in her own individual name. The intestate was buried in the plot which she so purchased. The price paid was not unreasonable. The fact that the title was taken by Mrs. Wardell in her individual name, instead of her name as administratrix, was undoubtedly due to inadvertence, or to the fact that she and those who gave her the deed supposed that that was the proper way to convey the plot to secure it for the use for which it was bought. But, however that may be, she appears to have acted in good faith. The allowance was properly made.

The appellant objects to the allowance of the amounts of certain bills paid by the administrators, upon the ground that there was no proper proof of the payments to justify the allowance. Except in the case of the allowance of $100, as paid to Lawrence, Townsend & Crane, and $26.75, as having been paid to Arthur V. Conover, former surrogate, for fees upon the granting of the letters of administration, proving and filing and recording inventory &c., and fees upon rule to bar creditors and advertising such rule, there were vouchers in the shape of receipts or receipted bills for all of the items objected to. In

.addition to the bill and receipt of John M. Lambertson, there was proof, by the testimony of the accountant, of payment of the amount allowed. The payment of $620 to William H. Posten, for which there is no voucher, was proved by his testimony. He swore that the administrators assigned to him, on account of notes which he held against the estate, mortgages of the estate to the amount of $420, and that they paid him $200 in cash out of the assets of the estate upon the same account, .and that a further sum of $150 was paid to him on the same account after the sale of real estate under the order of the court .of chancery.

It is true, the accountant denied that she paid any of that money except the $150, but the denial was undoubtedly due to want of memory in regard to the transaction which took place from twenty to thirty years previously. It is very probable that the business of the payment of the $620 by the assignment of the mortgages and the payment of the $200 cash, was not conducted .by her, but was done by Mr. Posten, her co-administrator; she probably paid the $150 herself. Although the orphans court were satisfied that all the estate had come to her hands, there is evidence that her co-administrator took some part at least in the .administration. The payment of the interest upon the mortgages on the real estate of part of which payment the appellant complains, was made by him. The bill of L. G. Irwin for $12, .appears to have been paid by him, and the bill of Joseph D. Bedle for $12, for services for the estate, was also paid by him. William H. Posten testifies that the administrators assigned the mortgages and paid the $200 and $150 to him. The payments .of which there is no proof except the vouchers, are the following : Joseph D. Bedle, $12, just mentioned ; Gordon D. White, $79 ; Dr. Cook, $33.25 ; Dr. Dayton, $25.62½ ; Joel Parker, $5 ; Elisha Holmes, $25.25 ; Creveling, Warne & Garrison, $49.41 ; Powers & Dederick, $38.60, and two of L. G. Irwin, .one above-mentioned, of $12, and the other of $6.16. According to the vouchers, the payment to Gordon D. White was in full of all demands ; that to Joseph D. Bedle for services for the estate ; those to Drs. Cook and Dayton for medical attendance

and medicines; that to Joel Parker for counsel fee (it would seem for advice given to the administratrix); that to Elisha Holmes for money due him from the estate (it acknowledges the receipt from the administratrix of $25.25 in full); that to Creveling, Warne & Garrison, for merchandise to date (July 9th, 1856), and that to Powers & Dederick for balance of the intestate's account. The receipt of L. G. Irwin for $12 is a receipt for money from the administrators, and the voucher for the $6.16 is a receipted bill of goods.

To consider first, the items for which there are no vouchers of any kind. The proof in reference to the claim for allowance of $100, as paid to Lawrence, Townsend & Crane, was the testimony of Elihu B. Bedle and the accountant. The former said that he paid about that amount, as nearly as he could recollect, to that firm for the latter with money received from her, and that he had endeavored to find the firm, but had been unsuccessful, they having gone out of business. On the other hand, the accountant testified that she did not recollect any such transaction, and she claimed no allowance therefor. That sum must have been allowed at the instance of the surety. It should have been rejected. There was no evidence whatever that the $100 were paid on account of the estate.

As before stated, there were no vouchers for the payments to the former surrogate. But those payments were such as the administrators were by law required to make to the surrogate for the services specified, and if they did not in fact make them they were liable to him therefor. They probably, according to the course of business, made them. The orphans court (in which the record was) found that the services had been rendered. The allowance was properly made.

As to the disputed allowances of claims of the payment or legality of which there was no evidence except the vouchers. All of the payments except two, the payment to Joseph D. Bedle and the payment of $12 to L. G. Irwin, appear by the vouchers to have been made by the accountant. The signatures to all of the vouchers were duly proved. The accountant appears to have been examined as to some of the

Birkholm v. Wardell.

payments for which allowance was claimed. Why she was not examined as to these under consideration does not appear. It would seem that upon proving the signatures she submitted the vouchers as proof of the payment of the claims, as valid claims against the estate. It does not appear that she was called upon to substantiate the payments by further proof, nor that the validity of the claims was called in question. Had she been required to prove either of those matters, she probably could have sworn to the payment of those claims, at least, which were paid by her, and perhaps to the payment of those also, which were paid by her co-administrator, or she might have proved the payments otherwise; and she might have been able to establish the validity of the claims. According to the statement of facts and evidence before referred to, the course taken by the court in restating the account was as follows: When the exceptions to the account filed by the accountant, by which she charged herself with the amount of the inventory and claimed allowance for the whole amount of it, on the ground that her co-administrator had taken charge of and had administered the entire estate, came on for hearing, the court directed that the account be restated, upon the theory that the whole of the estate had come to the hands of the accountant; and with a view to saving time, directed that without preparing any other account, she should proceed to introduce any matters for which she claimed allowance, as having been paid by her; such items, so far as those mentioned in the petition of appeal were concerned, except the item of allowance for uncollectible book accounts, being each and all understood to be taken, and to be taken as subject to exception, and as being excepted to by the exceptant. That provision, that the claims of allowance were to be regarded as being excepted to as soon as they were made, would not make it necessary for the accountant to produce further proof of her payments than the vouchers, or to produce any proof of the validity of the claims, unless called upon to do so. Vouchers are *prima facie* proof of disbursements.

If the exceptant intended to put the accountant to further and full proof, he should have objected to the allowance of the claims

for want of such proof. The rule in respect to the receipt of vouchers upon an accounting before a master is laid down to be, that in all matters of account, the party who produces them in support of the account, does so at his peril, and the master is bound to admit them in evidence, except the other side can lay a reasonable ground to show that the voucher in question can be impeached, of which the master is to judge, and then to require evidence in regard to it, if he thinks proper. *Hoffm. Off. Mast. in Ch. 81; Bennet's Pract. in Mast. Off. 85; Halsted v. Tyng, 2 Stew. Eq. 86.* The allowances under consideration were therefore properly made.

The appellant objects to the allowance of commissions. He insists that the respondent has been shown to have been guilty of misconduct in the execution of her trust, because it appears that she mingled the money of the estate with her own funds, and did not account until cited to do so, nearly thirty years after the issuing of the letters of administration. Book accounts to the amount of $63.83, included in the inventory and appraised at that sum, proved to be uncollectible; so that the amount of the inventory with which the respondent was chargeable was $1,719.86. Of this sum, nearly $1,300 were paid out in the years 1855, 1856 and 1857, leaving a balance in her hands of about $420, from which her commissions and the costs of settlement were to be deducted.

It appears, as before stated, that her co-administrator took part in the settlement of the estate. She swears that she handed the books and papers over to him for the purpose of accounting, and that when she was cited to account she supposed that the account had been settled years previously. It does not appear when it was that she so handed over the books and papers. But enough appears to prevent the conclusion that it was through bad faith that she did not account. No dereliction of duty of sufficient importance to deprive her of commissions is shown.

The appellant insists that she should be required to pay compound interest upon the balance in her hands. But when it is considered that she did not claim the $200 exemption to which

Birkholm v. Wardell.

she was entitled, and that she supported the appellant, who was only about two months old when the intestate died, up to the time when he became twenty years old, that is, from August, 1855, up to the summer of 1875, and that the net rents and profits of the real estate were insufficient for their support, it is obvious that it would be unreasonable and unjust to charge her with interest. The cost of his support, over and above his share of the net rents and profits, would probably exceed any amount of interest which could be justly charged against her in his favor had she not so supported him. In *Jordan* v. *Clark, 1 C. E. Gr. 243*, support furnished to a legatee was held to be an equitable satisfaction for a claim for interest upon the legacy.

According to the evidence, the accountant paid to William H. Posten, out of the money she received from the sale of real estate, $150, on account of the notes which he held against the estate. The court did not allow this payment. But it clearly ought to have been allowed. She paid the money out of funds for which she was responsible as special guardian, and for which she was bound to account to the court of chancery. It does not appear that she had any authority from that court to make the payment.

The accountant proved that she had paid $31.35 for the funeral expenses of the intestate. The court appears to have allowed only $11.35. It undoubtedly intended to allow the whole bill. There was no reason for disallowing any part of it. Although the accountant did not appeal from the decree, this court may correct obvious mistakes made in the allowances to her prejudice. The allowance of $100 for the claim of Lawrence, Townsend & Crane should be stricken out, and the accountant should be allowed the $150 paid William H. Posten and the amount ($20) of the error in the bill of funeral expenses. No costs of the appeal will be awarded to either side.